IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14–cv–01578–CMA–KMT

KENNETH R. DAVIDSON,

      Plaintiff,

v.

BANK OF AMERICA N.A., and
GREEN TREE SERVICING LLC,

      Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Magistrate Judge Kathleen M. Tafoya**

     This  matter is before the court on Defendant Bank of America, N.A.'s ("BANA")

"Motion to Dismiss Plaintiff's Amended Complaint" (Doc. No. 92 ["BANA's Mot."], filed

August 24, 2015), to which Plaintiff has filed a Response.  (Doc. No. 99, filed September 10,

2015).  Additionally, Defendant Green Tree Servicing LLC's ("Green Tree") has filed a

"Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc.

No. 83 ["GT's Mot."], filed August 10, 2015), to which Plaintiff has responded (Doc. No. 101,

filed September 14, 2015) and Green Tree has replied.  (Doc. No. 115-1 ["Reply"], filed October

22, 2015).

     Also before the Court is Plaintiff's "Motion for Leave to File Third Amended Complaint"

(Doc. No. 109 ["Mot. to Am."], filed on September 28, 2015), to which Green Tree has

responded (Doc. No. 117, filed October 22, 2015) and Plaintiff has replied.  (Doc. No. 121,  filed

November 5, 2015.)  Finally, Plaintiff has also filed a "Forthwith Motion for TRO/Permanent

Injunction Against Green Tree Servicing, LLC to Resurrect a Foreclosure Order to Avoid the Six

Year Statute of Limitations of the Rule 120 Case 2013CV30922" (Doc. No. 122, filed January 2,

2016), to which Green Tree has responded.  (Doc. No. 126, filed January 26, 2016.)

## STATEMENT OF THE CASE

This case involves the challenge to a foreclosure of a property in Littleton, Colorado

("Property").  (GT's Mot. at 1.)  Plaintiff initially obtained the subject mortgage loan on July 19,

2005 from America's Wholesale Lender.  (Doc. No. 79 ["Am. Comp."] at 7, filed July 24, 2015;

GT's Mot. at 1; Doc. No. 83-1 ["Note"].)  On that date, Plaintiff also executed a Deed of Trust

encumbering the Property.  (Doc. No. 83-2 ["Deed of Trust"].)  Under the Deed of Trust,

Plaintiff granted and conveyed the Property to Mortgage Electronic Systems, Inc. ("MERS"),

solely as nominee for AWL and its successors and assigns, as security for the repayment of the

Note.  (Deed of Trust at 9.)  Countrywide Home Loans, Inc., doing business as AWL, indorsed

the Note to BANA, and BANA indorsed the Note in blank.  (Note at 4.)  MERS executed an

Assignment of Deed of Trust to BANA on July 21, 2011.  (Doc. No. 83-3.)

Plaintiff contends that BANA failed to properly credit certain of his payments to his

mortgage loan in 2009 and 2010.  (Am. Comp. at 2-3, 7, 9.)  He also alleges that BANA initiated

an improper Intent to Accelerate on his mortgage loan on September 16, 2009.  (Am. Comp. at 7,

9, 12.)  According to Plaintiff, he was not delinquent on his mortgage payments at that time.

(*Id.*)  He also complains that BANA never disclosed within the terms of the Note the procedure

for accelerating the loan.  (*Id.*)

On March 15, 2011, Plaintiff sent a Notice of Right to Cancel to BANA, purportedly pursuant to the Truth in Lending Act ("TILA"), indicating Plaintiff's intent to cancel/void the mortgage loan based on various allegations, including but not limited to, that the mortgage was obtained by wrongful acts of fraud, fraudulent inducement, concealment and fraudulent misrepresentation, BANA's failure to provide Plaintiff with required disclosures, Plaintiff's contention that BANA had voided the mortgage as a result of improper accelerations, and BANA's alleged failure to properly apply Plaintiff's mortgage payments. (Doc. No. 1 at 29-31.) BANA, by and through counsel, responded to Plaintiff's Notice of Right to Cancel on May 12, 2011, stating that TILA's right of rescission does not apply to purchase money transactions, which the Note represented as Plaintiff had used the funds from the mortgage loan to purchase the Property. (Doc. No. 1 at 33.) BANA further explained that even if a right to rescind applied, it was subject to a three year limitation and Plaintiff's mortgage was executed in 2005, six years prior to Plaintiff's Notice of Right to Cancel. (*Id.*)

On May 26, 2011, Plaintiff filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Colorado. (BANA's Mot. at 2; Doc. No. 101-2.) Plaintiff obtained an Order of Discharge on September 2, 2011 and the case was closed on April 29, 2013. (BANA's Mot. at 2.)

On June 17, 2013, BANA transferred the Note and Deed of Trust to Green Tree. (Am. Comp. at 4-5; Doc. No. 83-4.) In October 2013, Green Tree initiated a Rule 120 foreclosure action on the Note. (Am. Comp. at 5; Doc. No. 83-5.) On December 6, 2013, Green Tree filed a Motion for Order Authorizing Sale with the Douglas County District Court. (Doc. No. 83-7.) Following a hearing, Green Tree obtained an Order Authorizing Sale on January 14, 2015. (Am.

Comp. at 17; Doc. No. 83-8; Doc. No. 83-10.)  On February 2, 2015, Green Tree terminated the

foreclosure proceedings.  (Am. Comp. at 18; Doc. No. 83-9.)[1]

Based on the above events, Plaintiff asserts (1) breach of contract, (2) breach of the

implied duty of good faith and fair dealing, (3) wrongful foreclosure, (4) a constitutional

challenge to Colorado's foreclosure procedure, and (5) intentional infliction of emotional

distress.  By these actions, Plaintiff is seeking injunctive relief preventing Defendants from

foreclosing on his Property, $1,000,000 in compensatory damages, free and clear title to the

Property, declaratory judgment that Colorado foreclosure proceedings violate due process

guarantees, legal fees and costs, as well as punitive damages.  (Am. Comp. at 14, 22.)

## LEGAL STANDARDS

### 1. *Pro Se* **Plaintiff**

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a pro se complaint "to less

stringent standards than formal pleadings drafted by lawyers").  However, a pro se litigant's

"conclusory allegations without supporting factual averments are insufficient to state a claim

upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)

(citations omitted). A court may not assume that a plaintiff can prove facts that have not been

alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated*

---

[1] According to Plaintiff's recent filings, Green Tree initiated another foreclosure action on September 17, 2015 and obtained an Order Authorizing Sale on January 19, 2016.  (Doc. No. 122 at 4; Doc. No. 124 at 1-2.)

*Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").[2]

**2. Failure to State a Claim Upon Which Relief Can Be Granted**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotations omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint

---

[2] Based on a thorough review of the Amended Complaint, the court finds Plaintiff has raised the five claims specified above. In addition to those five claims, Plaintiff randomly names other causes of action throughout the body of the Amended Complaint. "While the court must liberally construe a *pro se* litigant's complaint, 'liberal construction has its limits.'" *Fick v. US Bank Nat'l Assoc.*, No. 11-cv-03184-WYD-KLM, 2012 WL 5464592, at *4 (D. Colo. Sept. 10, 2012) (quoting *Langley v. Chase Home Fin., LLC*, No. 1:10-cv-604, 2011 WL 1150722, at *3 (W.D. Mich. Mar. 11, 2011)). The court does not recognize any actions beyond the five Plaintiff specifically pled and supported. The remaining and numerous theories of relief are unsupported by specific factual allegations and would leave the court in the position of constructing, *via* speculation, facts to support each one. This the court cannot do. *See id.* ("The Court should not be a *pro se* litigant's advocate, nor should the Court supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [her] behalf." (internal quotations omitted)).

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679-81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

## ANALYSIS

### 1. First and Second Claims for Relief - Breach of Contract & Breach of Implied Duty of Good Faith and Fair Dealing

Plaintiff asserts breach of contract and breach of the implied duty of good faith and fair dealing claims against both Defendants.  To succeed on a breach of contract claim, a plaintiff must prove: (1) the existence of a contract; (2) performance by the plaintiff or some justification of non-performance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff.  *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).  Additionally, "[u]nder Colorado law, every contract contains an implied duty of good faith and fair dealing."  *Dalton v. Countrywide Home Loans, Inc.*, 828 F.Supp.2d 1242, 1254-55 (D. Colo. 2011) (internal quotations omitted).  This duty does not inject substantive terms into a contract, but "requires only that the parties perform in good faith the obligations imposed by their agreement."  *Id.* at 1255 (internal quotations omitted).

### A. Green Tree

Plaintiff bases his contract claims against Green Tree on his contention that the Note supporting Green Tree's foreclosure actions was voided, *via* his Notice of Right to Cancel, prior to its transfer from BANA to Green Tree.  Thus, Plaintiff's argument to support his claims is that there is no contract.  Under this theory, Plaintiff could not meet the first element of his breach of contract claim.  *Diodosio*, 841 P.2d at 1058 ("the existence of a contract").  Nor would there be a contract upon which to base a duty of good faith and fair dealing.  *Dalton*, 828 F.Supp.2d at 1254-55.  Nevertheless, because Plaintiff's contention that he voided the Note constitutes the basis for several of his requests for relief, the court will address this issue directly.

Plaintiff is correct that TILA includes a right to rescind provision.  It provides that if a lender fails to make the material disclosures required under TILA, the borrower has the right to rescind the mortgage agreement within three years after the date on which the transaction is consummated.  *See* 15 U.S.C. § 1635.  Plaintiff claims BANA failed to provide certain required disclosures and therefore, he executed his right under TILA to rescind the Note.  (Am. Comp. at 4; Doc. No. 1 at 29-31.)  However, Plaintiff's reliance on TILA's right to rescind provision is misguided, at best.

First, TILA's right to rescission "does not apply to ... a residential mortgage transaction . . . ." 15 U.S.C. § 1635(e)(1).  The term 'residential mortgage transaction' is defined by TILA as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling."  15 U.S.C. § 1602(x).  In other words, the right to rescind under TILA would exist only if the Property had not itself been the security for the loan obtained to initially purchase the Property.

Here, the parties do not dispute that the Property was the security for the Note.  Additionally, BANA's response to Plaintiff's Notice of Right to Cancel indicates Plaintiff used the proceeds from the Note to *purchase* the Property.  (Doc. No. 1 at 33.)  If this statement is accurate, then clearly TILA's right to rescind does not apply.

Second, even assuming Plaintiff already possessed the Property prior to entering into the Note, the right to rescind is still unavailable because he did not attempt to act upon it until March

15, 2011.  (Note to Cancel.)  Plaintiff executed the Note in 2005 and the remedy of rescission is only available for three years.  15 U.S.C. § 1635(f).

Third, assuming the right of rescission did apply, which it did not, Plaintiff's unilateral act of simply sending the Notice of Right to Cancel would not void the Note.  As the Tenth Circuit recently explained, "a majority of circuit courts have held 'that unilateral notification of cancellation does not automatically void the loan contract' or the security interest."  *Sanders v. Mountain Am. Credit Union*, 621 F. App'x 520, 525 (10th Cir. 2015) (quoting *Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007) (listing cases)).

> [T]he security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined. Until such decision is made, the borrowers have only advanced a claim seeking rescission.

*Id.*  (quoting *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 54–55 (1st Cir. 2002)).[3]

It is clear that TILA's right of rescission was not available to Plaintiff in March 2011, either because it did not apply and/or because Plaintiff's attempt to rely upon it was untimely. The court finds Plaintiff's contract claims against either Green Tree or BANA based on an argument that he unilaterally voided the Note is without merit.

---

[3] Moreover, even if the court were to honor Plaintiff's rescission, he appears to be under the mistaken belief that he would simply retain the Property without further payment.  In actuality, Plaintiff would be required to return the amount of money loaned to him *via* the mortgage.  *See Sanders*, 621 F. App'x at 524 ("Where, as here, a creditor has delivered money to a consumer that is used to finance real property, the consumer must tender money to the creditor, not the real property").

**B. BANA**

**(i) Standing**

Plaintiff also asserts breach of contract and breach of the implied duty of good faith and fair dealing claims against BANA based on his allegations that BANA failed to properly apply and/or post various mortgage payments during 2009 and 2010 and improperly accelerated his Note in September 2009.  (Am. Comp. 7-12.)  In its Motion to Dismiss, BANA first asserts that because Plaintiff's present claims were not scheduled in his 2011 bankruptcy petition, and therefore were neither administered nor abandoned, the claims are property of the bankruptcy estate.  (BANA's Mot. at 5-8.)  As a consequence, BANA maintains that Plaintiff does not have standing to pursue these claims.  (*Id.* at 5-6.)  BANA presents an alternative argument that Plaintiff's contract claims are barred by the statute of limitations.  (BANA's Mot. at 8-9.)  Plaintiff disagrees with BANA's positions.

Federal Rule of Civil Procedure 17(a)(1) requires that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1).  Once a party files for bankruptcy, all "legal or equitable interests," including a debtor's potential causes of action, become the property of the bankruptcy estate, and the bankruptcy trustee, not the party, becomes the real party in interest with respect to the claims. 11 U.S.C. § 541(a); *see also Smith v. Rockett*, 522 F.3d 1080, 1084 (10th Cir. 2008); *see also Barger v. City of Cartersville*, 348 F.3d 1289, 1291 (11th Cir. 2003) ("[P]roperty of the bankruptcy estate includes all potential causes of action that exist at the time petitioner files for bankruptcy"); *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) ("Every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541.").

As a consequence, "[t]he bankruptcy code imposes a duty upon a debtor to disclose all assets, including contingent and unliquidated claims." *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1159 (10th Cir. 2007) (citing 11 U.S.C. § 521(1)). "That duty encompasses disclosure of all legal claims and causes of action, pending or potential, which a debtor might have." *Id.* (citing *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999)). When a bankruptcy action is closed, "'properly scheduled' assets not otherwise administered revert 'to the debtor through abandonment under 11 U.S.C. § 554(c).'" *Clark v. Trailiner Corp.*, No. 00–5020, 2000 WL 1694299, at *1 (10th Cir. Nov. 13, 2000) (quoting *Hutchins v. IRS*, 67 F.3d 40, 43 (3d Cir. 1995)).

In response to BANA's Motion to Dismiss, Plaintiff submitted the Petition he filed to initiate his bankruptcy proceeding. (Doc. No. 101-2.) The Petition reveals that Plaintiff did include a claim against BANA in his list of scheduled assets. (Doc. No. 101-2 at 2.) Specifically, Plaintiff described the asset as a "[c]laim against Bank of America, N.A., 1st mortgage holder, to invalidate its lien on residence of Debtor and damages for violations of RESPA." (*Id.*) The description raises the question of whether it is sufficient to encompass Plaintiff's contract claims against BANA. However, it is not necessary to answer this question because, as discussed *infra*, the court finds that regardless of whether the claim should be considered a part of Plaintiff's bankruptcy estate or abandoned by the bankruptcy trustee, the claim is untimely.

Incidentally, even if Plaintiff's contract claims are considered part of the bankruptcy estate, they only remain so to the extent he is seeking monetary damages. A plaintiff ordinarily will remain the real party in interest with respect to claims for injunctive relief, which Plaintiff

has requested herein. *Wilkerson v. Schirmer*, 04–cv–00258–WDM–MEH, 2009 WL 2766716, at

*1 (D. Colo. Aug 26, 2009); *see also Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1273 n.4

(11th Cir. 2004) (noting that a debtor would remain a plaintiff for a cause of action seeking

injunctive relief); *EEOC v. Outback Steak House, Inc.*, 06–cv–1935–EWN–KLM, 2008 WL

3992171, at *3 (D. Colo. Aug. 20, 2008) (clarifying that an order granting the defendant's

motion to dismiss because the bankruptcy trustee was the real party in interest only applied to

monetary claims and did not dismiss the injunctive claims). Because "[t]he trustee and creditors

are interested [only] in the debtor's property that can add anything of value to the estate," the

important and necessary reasons for requiring that the trustee bring unscheduled claims for

monetary relief do not apply to claims for injunctive relief. *Burnes v. Pemco Aeroplex, Inc.,* 291

F.3d 1282, 1289 (11th Cir. 2002).

**(ii)  Statute of Limitations**

In its alternative argument, BANA argues that Plaintiff's claims, whether pursued by the

bankruptcy trustee or Plaintiff himself, are barred by the applicable statute of limitations.

(BANA's Mot. at 8-9.)  "At the motion-to-dismiss stage, a complaint may be dismissed on the

basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiff[ ] can

prove no set of facts that toll the statute." *Matthews v. Wiley*, No. 09–cv–00978–PAB–CBS,

2010 WL 3703357, at *5 (D. Colo. Sep. 13, 2010) (citing *Tello v. Dean Witter Reynolds, Inc.*,

410 F.3d 1275, 1288 n.13 (11th Cir. 2005)); *see also Bullington v. United Air Lines, Inc.*, 186

F.3d 1301, 1310 n.3 (10th Cir. 1999) (noting "that Rule 12(b)(6) is a proper vehicle for

dismissing a complaint that, on its face, indicates the existence of an affirmative defense such as

noncompliance with the limitations period"); *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036,

1041 n.4 (10th Cir. 1980) ("While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute.").

Pursuant to Colo. Rev. Stat. § 13-80-101(1)(a), a breach of contract claim, including personal contracts and actions arising under the Uniform Commercial Code, is subject to a three year statute of limitations.  *See Grillo v. JP Morgan Chase & Co.*, No. 13–cv–03233–RBJ–KLM, 2014 WL 4470439, at *2 n.2 (D. Colo. Sept. 8, 2014) (noting that the three year statute of limitations on contract actions controls the plaintiff's claims regarding the defendant's alleged breach of mortgage note, including claims for breach of contract and breach of the implied duty of good faith and fair dealing) (citing *Clementson v. Countrywide Fin. Corp.*, 464 F. App'x 706, 712-13 (10th Cir. 2012) (affirming the district court's application of the three year statute to the plaintiff's breach of contract claim arising from the mortgage note)).

In his Amended Complaint, Plaintiff acknowledges that he was aware in September and October 2009 that BANA had allegedly misapplied mortgage payments during that year.  (Am. Comp. at 2.)  Further, in March 2011, he based his purported Notice of Right to Cancel on BANA's alleged failure to apply his payments properly, "improper accelerations, faulty accounting possible embezzlement of my funds and for not answering specific questions on tendered qualified written responses."  (Am. Comp. at 4; *see also* Doc. 1 at 29-31.)  These allegations encompass the various bases for Plaintiff's contract claims against BANA and therefore, evidence Plaintiff was aware of the same by, at the very latest, March 2011.  Plaintiff did not initiate this action until June 4, 2014, more than three years after the claims accrued.

Further, even if the claims were properly before the bankruptcy estate, they would still be untimely.  When claims are subject to the control of the bankruptcy trustee, the statute of limitations calculus is slightly modified.  A bankruptcy court has the power to reopen the bankruptcy to administer previously unadministered assets and the bankruptcy trustee retains capacity to bring suit." 11 U.S.C. §§ 323(b), 350(b).

Section 108(a) of the Bankruptcy Code provides, in pertinent part:

(a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—

   (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

   (2) two years after the order for relief.

11 U.S.C. § 108(a).  In a typical voluntary bankruptcy proceeding under Chapter 7, the voluntary petition itself constitutes an order for relief.  11 U.S.C. § 301(b); *see also Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004) (citing 11 U.S.C. § 301).  Accordingly, where claims belong to the bankruptcy estate, the bankruptcy trustee must bring such claims before the later of (1) the end of the applicable limitations period, or (2) two years after the Chapter 7 bankruptcy petition was filed.  *See* 11 U.S.C. § 108(a).

Plaintiff filed his voluntary Chapter 7 bankruptcy petition on May 26, 2011.  (Doc. No. 101-2.)  Because the bankruptcy petition constitutes the order for relief, the bankruptcy trustee had until the later of May 26, 2013 or the actual limitations period, which in this case would be the later date, to file any claims otherwise barred by the applicable statute of limitations.  Thus,

the claims would be barred by the statute of limitations regardless of whether they were considered abandoned by the bankruptcy trustee or remained part of the bankruptcy estate.

Finally, Plaintiff appears to argue that the "continuing violation" doctrine should save his claims.  (Doc. No. 99 at 11.)  More specifically, Plaintiff argues that the misapplication of his 2009 payments is a "continued damage" with regard to the breach of contract that "has continued through the bankruptcy proceeding."  (*Id.*)  However, Colorado law limits the application of the "continuing violation" doctrine to employment discrimination cases.  *Polk v. Hergert Land & Cattle Co.*, 5 P.3d 402, 405 (Colo. App. 2000).  Therefore, because Plaintiff's allegations regarding lack of disclosures, misapplication of payments and an improper acceleration occurred in 2009 and 2010 and he was aware of the same in March 2011, at the very latest, any reverberating damages that occurred later do not save his claims from being time-barred.

**2.  Third Claim for Relief - Wrongful Foreclosure**

Plaintiff's "wrongful foreclosure" claim is similar to his breach of contract claim to the extent it is partially based on his contention that he voided the Note in March 2011 through his Notice of Right to Cancel.  (Am. Comp. at 14-17.)  Specifically, Plaintiff complains that BANA could not be a holder in due course of the Note, as required to initiate foreclosure proceedings, because it breached the Note and also, he voided it prior to the transfer to Green Tree.  (Am. Comp. at 14.)  With regard to Green Tree, Plaintiff argues that (1) Green Tree purchased nothing more than a voided Note from BANA; (2) Green Tree did not provide consideration or value for the Note; and, (3) Green Tree has not shown that it possesses the original Note.  (Am. Comp. at 15-16.)

As an initial matter, the court notes that Colorado does not recognize a claim for damages based on wrongful foreclosure. *Schwartz v. Bank of Am., N.A.*, No. 10-cv-1225-WYD-MJW, 2011 WL 1135001, at *4 (D. Colo. March 28, 2011) (citing *Commercial Equity Corp. v. Majestic Sav. & Loan Ass'n*, 620 P.2d 56, 58 (Colo. App. 1980)). Further, even if Colorado did recognize such a claim, it would be barred by the economic loss rule. "The economic loss rule serves to maintain a distinction between a tort obligation and a contract obligation." *Micale v. Bank One N.A. (Chicago)*, 382 F.Supp.2d 1207, 1220 (D. Colo. 2005). Under the economic loss rule, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Grynberg v. Agritech*, 10 P.3d 1267, 1269 (Colo. 2000). "The key to determining the availability of a contract or tort action lies in determining the source of the duty that forms the basis of the action." *Town of Alma v. Azco Const., Inc.*, 10 P.3d 1256, 1262 (Colo. 2000). In this case, the wrongful actions Plaintiff alleges each arise from the Note, a contract between the parties. Plaintiff does not point to a separate duty imposed by tort law that Defendants breached.

To the extent Plaintiff intends to argue that the parties lack standing to initiate foreclosure proceedings, his claim fails as a matter of law. Based on the record, it does not appear BANA ever initiated a foreclosure action against Plaintiff. Further, the court has already established, *supra*, that Plaintiff's Notice of Right to Cancel has no legal significance.

With regard to Plaintiff's argument that Green Tree did not pay sufficient consideration or value for the Note, Green Tree argues that because Plaintiff was not a party to that transaction, he is barred from attacking it collaterally. (GT's Mot. at 10.) The court agrees. There is ample case law holding that a borrower-plaintiff lacks standing to challenge the validity of assignments

of a promissory note because the plaintiff is not a party to those assignments. *Rose v. Aegis Wholesale Corp.,* No. 13–cv–03040–KMT, 2014 WL 4746721, at *7 (D. Colo. Sept. 24, 2014) (citing *Mbaku v. Bank of Am., Nat'l Ass'n*, No. 12–cv–00190–PAB–KLM, 2012 WL 5464592, at *5 (D. Colo. Aug. 20, 2012) (citing *Cingolani v. BAC Home Loans Servicing, L.P.,* Case No. 11–1519, 2012 WL 3029829, at *3 (E.D. Mich. July 25, 2012)); *see also Livonia Props. Holdings, LLC v. 12840–12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010). Here, it is clear that, regardless of its validity, Plaintiff was not a party to the transaction assigning or indorsing the Note.  As such, Plaintiff lacks standing to challenge the validity of the same.

Further, contrary to Plaintiff's contention, Colorado law does not require production of the original promissory note to initiate or complete a non-judicial foreclosure proceedings. Under Colorado law, a party seeking to initiate a public trustee foreclosure sale must be the "holder of an evidence of debt." Colo. Rev. Stat. § 38–38–101(1).  An evidence of debt means a "writing that evidences a promise to pay or a right to the payment of a monetary obligation, such as a promissory note, bond, negotiable instrument, a loan, credit, or similar agreement, or a monetary judgment entered by a court of competent jurisdiction."  Colo. Rev. Stat. § 38–38–100.3(8).  A "holder of an evidence of debt" is a person in "actual possession of" or "entitled to enforce an evidence of debt." Colo. Rev. Stat. § 38–38–100.3(10).

> Although Colorado statutes define a holder of an evidence of debt as a person with actual possession of or entitled to enforce an evidence of debt, a party initiating a public trustee foreclosure sale is not required to produce the original evidence of debt. Colo. Rev. Stat. § 38–38–101(1); *In re Miller*, 666 F.3d at 1264. Instead, a party moving for a public trustee foreclosure sale may establish its standing to foreclose by filing with the public trustee (1) a copy of the evidence of debt and a certification signed by the holder or the holder's attorney stating that the copy is true and correct and (2) a copy of the deed of trust and a certification

17

> by the holder or the holder's attorney stating that the copy is true and correct.
> Colo. Rev. Stat. §§ 38–38–101(2)(a), 38–38–101(1)(b)(II).

*May v. U.S. Bank, N.A.,* No. 13–cv–01621–PAB–MJW, 2013 WL 4462033, at *7 (D. Colo. 2013).

Plaintiff's Amended Complaint contains no allegation that Green Tree failed to produce a certified copy of the promissory note or that the proper procedure for initiating foreclosure proceedings was otherwise not followed.  *See Sneed v. PNC Bank, Nat'l Ass'n,* No. 10–cv– 03016–REB–MJW, 2011 WL 7429423, at *4 (D. Colo. Sept. 7, 2011) (finding no merit to the plaintiff's argument on similar facts).  Accordingly, the court finds that Plaintiff's claim for wrongful foreclosure and/or that Green Tree lacks standing to bring foreclosure proceedings is without merit.

### 3.  Fourth Claim for Relief - Constitutional Challenge to Colorado's Foreclosure Procedure

Plaintiff seeks declaratory judgment that Colorado's foreclosure procedure is unconstitutional based on a lack of due process.  (Am. Comp. at 17-20.)  Defendant Green Tree is correct in its contention that the constitutionality of Colorado's foreclosure procedures has already been fully considered and upheld by this court, as well as the Tenth Circuit Court of Appeals.  *See Mbaku v. Bank of Am.,* No. 12-cv-00190, 2014 WL 4099313, at *3-9 (D. Colo. Aug. 20, 2014) (denying declaratory judgment to the plaintiff on question of whether Colorado's foreclosure procedure was unconstitutional under the due process clause of the Fourteenth Amendment), *aff'd by Mbaku v. Bank of Am.,* __ F. App'x. __, 2015 WL 3651596, at *2-4 (10th Cir. 2015).

**4.  Fifth Claim for Relief - Intentional Infliction of Emotional Distress**

The court also finds Plaintiff's claim for intentional infliction of emotional distress fails to state a claim for relief.  To state a claim for intentional infliction of emotional distress, a plaintiff must show that "(1) the defendant engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff to suffer emotional distress."  *McCarty v. Kaiser–Hill Co.*, LLC, 15 P.3d 1122, 1126 (Colo. App. 2000).  As to the first element,

> [T]he level of outrageousness required to create liability for intentional infliction of emotional distress is extremely high: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665–66 (Colo. 1999) (quoting *Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970)).

Plaintiff's Amended Complaint fails to allege any facts that would sustain a claim for intentional infliction of emotional distress.  The court agrees with *Northern Natural Gas Company v. L.D. Drilling*, No. 08-1405-WEB-DWB, 2010 WL 3892227 (D. Kan. 2010), which found that a defendant is "never liable … 'where he has done no more than insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.'"  *Id.* at *4 (quoting Restatement (Second) of Torts § 46 cmt. g (Am. Law Inst. 1975)).

While this court does not discount the stress associated with involuntary foreclosure proceedings, Plaintiff's allegations that the underlying events related to the foreclosure actions have caused him emotional distress are insufficient to state a claim for intentional infliction of

emotional distress.  *See Ramos v. Countrywide Bank, FSB*, 2:09–CV–449 TS, 2009 WL 3584327, at *5 (D. Utah 2009) ("Plaintiff's conclusory allegations, unsupported by any factual averments, do not meet the standard set forth above.  While the foreclosure process is certainly stressful, Plaintiff has not sufficiently alleged the kind of outrageous conduct needed to support a claim of intentional infliction of emotional distress.").

**5.  Claims Regarding Consent Orders**

Throughout his Complaint and his Responses to Defendants' Motions to Dismiss, Plaintiff attempts to rely on consent orders entered in other courts between Defendants and third parties, generally federal agencies/entities, as support for various allegations.  (Doc. No. 1 (Ex. 4) at 14-15; Doc. No. 99-1, 99-2; Doc. No. 101-1.)  However, there is no legal basis for Plaintiff to rely upon or seek relief in this matter based upon consent orders entered in other courts and to which Plaintiff is not a party.  For purposes of enforcement, the Supreme Court has held that consent decrees must be construed basically as contracts.  *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975).  Consequently, a non-party to a consent decree may not enforce the decree by seeking damages for breach of the decree.  "[A] well-settled line of authority from this Court establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefitted by it."  *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975) (citing *United States v. Armour & Co.*, 402 U.S. 673 (1971); *Buckeye Coal & R. Co. v. Hocking Valley R. Co.*, 269 U.S. 42 (1925)).

Plaintiff relies upon and has submitted to this court the Consent Judgment entered in the matter of *United States v. Bank of America Corp.*, *et. al.,* No. 12-0361 (D. D.C. April 4, 2012). (Doc. Nos. 99-1, 99-2)  Other courts considering this same Consent Judgment have held, and this

court agrees, that "by its terms, this Consent Judgment is not enforceable by individual third-party beneficiaries" because it "specifically states that enforcement actions may be brought by a 'Party to this Consent Judgment or the Monitoring Committee.'" *Conant v. Wells Fargo Bank, N.A.,* 24 F. Supp. 3d 1, 16 (D.D.C. 2014) (quoting *United States v. Bank of Am. Corp.*, *et al.*, No. 12–0361 (D.D.C. Apr. 4, 2012), Consent Judgment).

In response to similar actions individual homeowners have filed seeking to enforce the terms of the same Consent Judgment, courts have uniformly concluded that individual borrowers, such as Plaintiff, are neither parties to the Consent Judgment nor members of the Monitoring Committee, and therefore are not in a position to enforce any obligation imposed on the parties to that judgment. *See, e.g., Andre v. Bank of Am., N.A.,* No. 5:14–cv–02888–PSG, 2014 WL 6895240, at *4 (N.D. Cal. Dec. 5, 2014); *Fontaine v. JP Morgan Chase Bank, N.A.*, 42 F. Supp. 3d 102, 110-11 (D. D.C. 2014); *McCain v. Bank of America*, 13 F. Supp. 3d 45, 55–56 (D.D.C. Jan. 30, 2014); *Winders v. CitiMortgage, Inc.,* No. 3:13–CV–56 (CDL), 2013 WL 4039399, at *1-2 (M.D. Ga. August 7, 2013); *Ghaffari v. Wells Fargo Bank, N.A.*, 6 F. Supp. 3d 24, 30 (D.D.C. 2013); *Glaviano v. JP Morgan Chase Bank, N.A.*, No. 13-20149 (RMC), 2013 WL 6823122, at *1 n.1 (D.D.C. December 27, 2013).

Similarly, Plaintiff also submitted to this court a Stipulated Order entered in the matter of *Fed'l Trade Comm'n v. Green Tree Servicing, LLC*, No. 15-cv-02064 (SRN-JSM). (Doc. No. 101-1.) Plaintiff contends that it provides to him a right to seek damages against Green Tree as a third-party beneficiary of the Stipulated Order. (Doc. No. 101 at 2, 12.) However, similar to the Consent Judgment to which Bank of America was a party, the Stipulated Order does not provide

any cause of action or similar right to Plaintiff.  (Doc. No. 101-1 at 7 (reserving right of enforcement to governmental agency, entity or representative.))

Neither of these orders hold legal significance to the present case.  As repeatedly argued by Defendants, they do not provide Plaintiff with causes of actions or a third-party right to enforce.  Nor do they in any way undermine arguments presented in Defendants' Motions, which are based on matters of law rather than factual assertions.

**6.  Motion for Leave to Amend**

Plaintiff seeks leave to amend his Amended Complaint in order to assert additional breach of contract claims, claims based upon the above-referenced Consent Orders, and additional claims arising from his contention that he voided the Note in March 2011.  (*See generally* Doc. No. 109-1.)  Under Rule 15(a), a court should allow a party to amend its pleadings "when justice so requires."  Fed. R. Civ. P. 15(a).  The grant or denial of an opportunity to amend is within the discretion of the court, but "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1366 (10th Cir. 1993).  Proposed amendments are futile when the amended complaint "would be subject to dismissal for any reason . . . ."  *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1240–41 (10th Cir. 2001).  "The futility question is functionally

equivalent to the question whether a complaint may be dismissed for failure to state a claim." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999) (citations omitted).

In his proposed Amended Complaint, the factual bases for Plaintiff's additional contract claims have primarily remained the same but he now sets the claims out as "total" and "material" breach of contract, breach of implied duties and breach of performed duties.  (Doc. 109-1 at 12-23.)  Permitting Plaintiff to amend his Complaint in order to add these claims would be futile as, for the reasons set forth above, the contract claims are barred by the statute of limitations.

Additionally, Plaintiff partially bases his "breach of performed duties," as well as two more proposed claims, on his purported ability to enforce the Consent Orders.  (Doc. 109-1 at 24.)  The court has already established, *supra*, that the Consent Orders do not provide Plaintiff with a cause of action or other enforceable right.

Similarly, Plaintiff proposes to assert additional causes of action, including fraud, "enforcing a cancelled note," "deed of trust has been released by trustee" and "RESPA, FTC, FDIC, TILA, disclosure violations," based on his contention that he unilaterally voided the Note by submitting the Notice of Right to Cancel to BANA.  (Doc. No. 109-1 at 32-34, 36-38.)  As discussed, Plaintiff's belief that he unilaterally cancelled his mortgage is simply inaccurate. Therefore, any cause of action based on this contention is not viable.

Plaintiff also seeks to add a cause of action entitled "statute of limitations," in which he contends that Green Tree's foreclosure action should be barred by the statute of limitations. However, a statute of limitations is limited to being an affirmative defense rather than a cause of action in its own right.  *See* Fed. R. Civ. P. 8(c)(1); *see also Rosette, Inc. v. U.S.,* 141 F.3d 1394, 1396 (10th Cir. 1998) (noting the "well-settled maxim that limitations do not normally run

against a defense, or, in other words, that a statute of limitations may be used only as a shield, not as a sword." (citing *Northern Pac. Ry. v. United States,* 277 F.2d 615, 623–24 (10th Cir. 1960))*; Outlaw v. Garner*, 51 S.E. 925, 925 (1905) ("statute of limitations . . . is a shield, never a sword.").

The court finds Plaintiff's proposed claims are futile insofar as they fail to state a claim upon which relief could be granted.

**7. Motion for Temporary Restraining Order**

Finally, Plaintiff has requested a temporary restraining order pursuant to Fed. R. Civ. P. 65(b) seeking to enjoin Green Tree's foreclosure proceedings.  Where the opposing party has notice, as they do in this case, the procedure and standards for issuance of a temporary restraining order mirror those for a preliminary injunction.  *Emmis Commc'ns Corp. v. Media Strategies, Inc.*, Civ.A. 00–WY–2507CB, 2001 WL 111229, *2 (D. Colo. Jan. 23, 2001).  A party seeking preliminary injunction must meet the following four conditions:

> (1) the movant will suffer irreparable harm unless the injunction issues; (2) there is a substantial likelihood the movant ultimately will prevail on the merits; (3) the threatened injury to the movant outweighs any harm the proposed injunction may cause the opposing party; and (4) the injunction would not be contrary to the public interest.

*ACLU v. Johnson*, 194 F.3d 1149, 1155 (10th Cir. 1999).  Ultimately, because "a preliminary injunction is an extraordinary remedy," the moving party must establish that his "right to relief [is] clear and unequivocal."  *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

This court has recommended that Defendants' motions to dismiss be granted and his amendments be denied. Therefore, there is not a substantial likelihood Plaintiff ultimately will

prevail on the merits, one of the requirements for preliminary injunction. *ACLU*, 194 F.3d at

1155.  Accordingly, Plaintiff's request for a temporary restraining order should be denied.

WHEREFORE, for the foregoing reasons, this court respectfully

**RECOMMENDS** that "Defendant's Motion to Dismiss Plaintiff's Amended Complaint

Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 83) be GRANTED;

**RECOMMENDS** that Defendant Bank of America, N.A.'s "Motion to Dismiss

Plaintiff's Amended Complaint" (Doc. No. 92) be **GRANTED;**

**RECOMMENDS** that Plaintiff's "Motion for Leave to file Third Amended Complaint"

(Doc. No. 109) be **DENIED**;

**RECOMMENDS** that Plaintiff's "Forthwith Motion for TRO/Permanent Injunction

Against Green Tree Servicing, LLC to Resurrect a Foreclosure Order to Avoid the Six Year

Statute of Limitations of the Rule 120 Case 2013CV30922 (F.R.C.P. 65(B)" be **DENIED**.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real Prop.

Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (stating that a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059–60 (stating that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (holding that cross-claimant had waived its right to appeal those portions of the ruling by failing to object to certain portions of the magistrate judge's order); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (holding that plaintiffs waived their right to appeal the magistrate judge's ruling by their failure to file objections). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (stating that firm waiver rule does not apply when the interests of justice require review).

Dated this 1st day of February, 2016.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge